UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.07-80912-Civ-Hopkins

JOHN WAJCMAN, et al.,
individually and on behalf of
others similarly situated,

                Plaintiffs,

vs.

INVESTMENT CORPORATION OF
PALM BEACH, d/b/a PALM BEACH
KENNEL CLUB,

                Defendant.
_____/

## ORDER REGARDING THE PARTIES' MOTIONS *IN LIMINE* (DE 98, 99, 111)

**THIS CAUSE** has come before this Court upon: (1) Defendant's Motion *in Limine* to preclude from trial any evidence regarding prior settlements in similar cases with poker facilities that are not parties to this action (DE 99); (2) Plaintiffs' Motion *in Limine* to exclude testimony from witnesses at other poker facilities (DE 98); and (3) Defendant's Motion to Strike an individual from Plaintiffs' witness list (DE 111). Responses to each of these motions have been filed (DE 101, 108, 114), and the Court heard oral argument of the motions on February 11, 2009. The parties have consented to magistrate judge jurisdiction over the trial of this matter, which is scheduled to commence on March 2, 2009.[1]

---

[1] To the extent Plaintiffs' Motion *in Limine* also sought to exclude evidence regarding the discipline or termination of the Plaintiffs and the execution of their interrogatory responses (DE 98), defense counsel agreed at oral argument to refrain from introducing such evidence without prior warning to the Court and plaintiffs' counsel at sidebar. Accordingly, those motions are **denied without prejudice to renew.**

**BACKGROUND**

Plaintiffs initiated this collective action alleging that Defendant violated the Fair Labor Standards Act ("FLSA") while Plaintiffs were employed as poker dealers in Defendant's cardroom between 2004 and 2007. Specifically, Plaintiffs allege that Defendant violated the FLSA by mandating their participation in a tip pooling scheme, whereby the poker dealers were required to share their tips with the cardroom floor supervisors, who did not have significant interaction with the customers and did not normally receive tips. Under the FLSA, employers can take a "tip credit" against their tipped employees, which allows the employer to pay those employees less than the minimum wage. 29 U.S.C. § 203(m). However, in doing so, the employer cannot require their employees to participate in a tip pool with other employees who do not "customarily and regularly receive tips." *Id.* According to Plaintiffs, Defendant violated the FLSA by including the floor supervisors in the tip pool. On March 20, 2008, the District Court denied Defendant's motion for summary judgment (DE 51), finding disputed facts regarding the extent to which the floor supervisors interacted with the cardroom's customers. *See Wajcman v. Investment Corp. of Palm Beach*, 2008 WL 783741 (S.D. Fla. March 20, 2008).

**DISCUSSION**

**1.  Defendant's Motion in Limine**

Pursuant to Federal Rule of Evidence 408, evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, however, it may be admitted "when the evidence is offered for another purpose, such as proving

bias or prejudice of a witness." Fed.R.Evid. 408.  "Evidence of the compromise of a claim different than the claim currently in dispute therefore is admissible unless the compromise evidence requires an inference as to the offeror's belief concerning the validity or invalidity of the compromised claim."  *Uforma/Shelby Business Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997).  Notably, "the question of whether Rule 408 bars evidence of a settlement between one of the parties and a third party when such settlement involves similar circumstances to, but does not arise out of, the transaction with which the litigation is concerned" remains undecided by the Eleventh Circuit.  *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307, n. 2 (11th Cir. 1985).

     Here, Plaintiffs seek to introduce evidence of settlements between other poker facilities and their employees - some of whom are also Plaintiffs in this action – with regard to their tip pooling practices.  It appears that Plaintiffs seek to offer this evidence to establish that other poker facilities, which may have included floor supervisors in their tip pools, were guilty of violating the FLSA.  However, admitting evidence of such settlement agreements for that purpose would run afoul of Rule 408 because a settlement cannot be used as proof of a party's liability.  *See Smith Property Holdings, 4411 Connecticut L.L.C. v. United States,* 311 F. Supp. 2d 69, 83 (D.D.C. 2004).  Moreover, as will be discussed below, this Court fails to see how settlements by other poker facilities are relevant to the issue of whether this Defendant violated the FLSA.

     Thus, unless Plaintiffs can demonstrate that evidence of other poker facilities' FLSA settlements should be admitted for some purpose other than to suggest that those facilities, and likewise Defendant, have violated the FLSA, the Court will not permit the evidence to be

introduced at trial.  *See generally Sears v. PHP of Alabama, Inc.*, 2006 WL 1223302, *2 (M.D. Ala. May 5, 2006)(court excluded evidence of settlement in other cases where Plaintiff sought to make improper implications about liability); *Imtiazuddin v. North Avenue Auto, Inc.,*2004 WL 2418295, *2-3 (N.D. Ill. Oct. 27, 2004)(court found plaintiff's settlements with other defendants to be inadmissible, where their relevance and probative value was "doubtful," the evidence would likely be a "waste of time" and only lead to "jury confusion");  *Pioneer Hi-Bred Intern., Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144 (N.D. Iowa 2003)(settlements with other defendants are "not ordinarily admissible").


**2.  Plaintiffs' Motion in Limine**

Defendant seeks to introduce at trial the testimony of seven witnesses who are employees at other local cardrooms.  This proposed testimony has resulted in the parties' primary dispute, namely, the type of proof that should be presented to the jury to assist it in determining whether floor supervisors are properly included in Defendant's tip pool.  According to Plaintiffs, the primary evidence should focus on the floor supervisors employed at Defendant's cardroom and the amount and type of customer interaction they had with the patrons of Defendant's cardroom. While Defendant appears to agree that the level of customer interaction is somewhat relevant in determining whether an employee qualifies as a "tipped employee" under the FLSA, Defendant contends that the industry custom of including floor supervisors in the tip pools is also relevant. Thus, Defendant seeks to elicit testimony from the employees at the other local cardrooms to demonstrate the casino industry's tradition and custom of including floor supervisors in the tip pool.  Defendant also seeks to rely on these witnesses' testimony to show "the types of

interaction that [these other] floor supervisors have with [their] customers" which, according to the defense, are "similar" to the types of customer interaction which the floor supervisors have at Defendant's cardroom.  (DE 108 at page 2).

Generally, when confronted with the question of which employees constitute "tipped employees" under the FLSA, courts (including the District Court when deciding Defendant's summary judgment motion) have focused their analysis on the level of customer interaction the specific employees in question had, as opposed to the amount of customer interaction experienced by the occupation as a whole.  *See Wajcman v. Investment Corp. of Palm Beach*, 2008 WL 783741, *3 (S.D. Fla. March 20, 2008)("the focus is properly drawn to the questions of whether *the employee* performs important customer service functions")(*emphasis added*); *Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, *18 (N.D. Ill. Sept. 20, 2007)(court evaluated the customer related activities of the two employees that plaintiffs claimed were improperly included in tip pool and concluded that both had "sufficient customer interaction" to be included in tip pool); *Townsend v. BG-Meridian, Inc.*, 2005 WL 2978899, *7 (W.D. Okla. Nov. 7, 2005)(court considered specific employee's duties in determining that he had "more than *de minimis* customer contact" and fell within the FLSA definition of "tipped employee"). Accordingly, here, the Court finds that the evidence at trial should focus on the customer interaction these particular floor supervisors had in Defendant's cardroom.

In this regard, the Court disagrees with Defendant's position that industry custom, in terms of who the industry decides to include in a tip pool, is relevant to the jury's consideration. Rather, if the Court were to permit the jury to consider evidence of how an industry's leaders and management customarily categorize and define their employees as a factor in determining

whether that practice was legal, it would, in essence, be allowing the industry to dictate the legality of its own practices. Thus, the Supreme Court has held that if an industry's custom violates the FLSA, it is irrelevant that the practice is prevalent. *See Barrentine v. Arkansas Best Freight System*, 450 U.S. 728, 741 (1981)(the FLSA was "not designed to codify or perpetuate [industry] customs and contracts" and any custom or contract "falling short" of the statute's purpose, such as an agreement to pay less than the minimum wage, "cannot be utilized to deprive employees of their statutory rights")(*citing Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944)(Court rejected argument by employer that it was tradition and custom in the mining industry for workers not to be paid for travel time into the mine, noting that the existence of such a custom was "immaterial" if the custom violated the FLSA; such a custom could not be used to override the employees' rights under the FLSA). Similarly, in other areas of the law, courts have been cautious in deferring to industry practice. *See, e.g., Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1340, n.9 (5th Cir. 1983)("industry practice is not conclusive" in determining whether a product is unreasonably dangerous); *Fitzgerald v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177, 186, n.2 (D. Mass. 2007)("To be sure, industry practices should not dictate copyright law.").

This is not to say that industry custom is never relevant. Indeed, the Court recognizes that the language of the FLSA defines a "tipped employee" as one who engages "in an occupation in which he *customarily and regularly* receives more than $30 a month in tips." 29 U.S.C. § 203(t)(*emphasis added*). This language suggests that industry norms are an important consideration in determining which employees are properly included in a tip pool under the FLSA. Although the Court declines to adopt Defendant's interpretation of this statute as

compelling the fact finder to consider how an industry's leaders and management categorize employees, the Court does find that industry custom from the *patron's* perspective is relevant. Indeed, the federal regulations, as well as the legislative history of the statute itself, indicate that it is the *customer's* expectation and intent that provides the basis for determining who qualifies as a "tipped employee."

The Code of Federal Regulations, in explaining the "general characteristics of tips," states that

> [a] tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him . . . [w]hether a tip is to be given, and its amount, *are matters determined solely by the customer*, *and generally he has the right to determine who shall be the recipient of his gratuity*.

29 C.F.R. §531.52 (*emphasis added*).

Similarly, in a report on the 1974 amendments to Section 203(m), the Senate Committee on Labor and Public Welfare set forth examples of the kinds of employees that may be included in a mandatory tip pool, such as "waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc." The report also identified employees who do not customarily and regularly receive tips to include "janitors, dishwashers, chefs, laundry room attendants, etc." *Roussell v. Brinker Intern., Inc.*, 2008 WL 2714079, *6-7 (S.D. Tex. July 9, 2008)(*quoting* S. Rep. 93-690, at 43 (Feb. 22, 1974)). Notably, these two categories of employees are not distinguished based upon whether the worker usually receives a tip directly from a customer, nor are the categories distinguished based on a significant level of customer interaction, since busboys and service bartenders generally have minimal customer contact and do not normally receive tips directly from customers. Rather, the distinguishing factor between these two groups of workers appears

7

to be those whom a patron would normally expect to be at least a partial recipient of his tip versus those workers whom the average patron would not contemplate tipping, nor expect to share in his tip.[2]

That Congress distinguishes between these occupations supports the Court's conclusion that determining who is a "tipped employee" requires an analysis from the customer's perspective. Thus, in determining whether an employee can be included in a tip pool, the fact finder should be permitted to consider whether the worker in question is one whom the customer would normally anticipate as sharing in the gratuity. *See Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 300-02 (6th Cir. 1998)(court found the fact that the restaurant prohibited its hosts and hostesses from accepting tips directly from customers indicated that customers considered them "tipped employees" and provided "some evidence" that they worked in an occupation that customarily and regularly received tips).

In this regard, there is no evidence currently before the Court to establish that the seven witnesses Defendant has identified from other cardrooms are competent to give testimony as to the tipping expectations of the patrons in the casino industry. *Cf. Garrett v. Albright*, 2008 WL 795684, *2 (W.D. Mo. March 21, 2008)(court found that witness's educational and practical background qualified him to testify about industry standards and practices).

---

[2] In *Roussell v. Brinker Intern., Inc.*, 2008 WL 2714079, the court noted the circularity problem of allowing an employer to argue that an employee may participate in a tip pool because he "customarily and regularly" receives tips as a member of the tip pool. Although the court ultimately concluded that an industry's custom of including a particular occupation in a tip pool may be admissible, it expressed concern that the circular reasoning "lack[ed] any limiting principle and would appear inconsistent with Congressional intent" because "[s]uch a reading would allow an employer to include virtually any employee in a tip pool simply by allowing them to regularly share in tips . . ." *Id.* at *9.

Based on the foregoing, the Court finds that Defendant has not established a sufficient basis for permitting testimony from these witnesses and, thus, Plaintiffs' motion to preclude testimony from these witnesses is **GRANTED.**[3]

Should Defendant seek to present evidence to establish the competency of these witnesses, defense counsel may do so at a pre-trial conference to be set for **February 25, 2009**, or at any time before calling them to testify.

### 3.  Defendant's Motion to Strike Plaintiff's Witness

Defendant seeks to strike Michael Cernobyl from Plaintiffs' witness list claiming that he was not disclosed as a trial witness until February 9, 2009.  Based on Defendant's motion papers and Plaintiffs' response, the Court discerns that Mr. Cernobyl, a former employee of Defendant, was responsible for creating the floor supervisor position, as well as establishing the now-disputed tip pool.  Evidently, Defendant terminated Mr. Cernobyl for dishonesty and theft, which led to his criminal prosecution and eventual conviction.  Plaintiffs contend that Mr. Cernobyl is not a newly identified witness and that, in fact, he was identified by Defendant over one year ago

---

[3]  To the extent Plaintiffs also contend that the witnesses from other cardrooms should be stricken because they were not timely disclosed, the Court disagrees.  Defendant disclosed these witnesses before the close of discovery and defense counsel offered to accommodate any depositions Plaintiffs wished to take.  (DE 108 at page 7).  Plaintiffs cannot now claim prejudice when they failed to depose these witnesses during the month after they were disclosed.  *See Koenig v. CBIZ Benefits & Ins. Services, Inc.*, 2006 WL 2715137, *4-5 (D. Neb. Sept. 22, 2006)(plaintiff could not claim unfair surprise or prejudice where she had notice of belated witness disclosure but did not seek to depose him).  Moreover, it does not appear that Plaintiffs sought to depose these witnesses at any time during the four month period when the District Court reopened discovery.  (DE 90).

as a person in possession of relevant knowledge and information.

Rule 26 states that a party must provide to other parties the name of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(I). The rules also require parties to supplement their Rule 26 disclosures in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). Failure to do so may result in the court prohibiting the disclosing party from presenting witnesses at trial, unless the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In determining whether the failure was harmless, the court should consider: (1) the importance of the testimony, (2) the reasons for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party in allowing the witness to testify. *Nightlight Systems, Inc. v. Nitelites Franchise Systems, Inc.*, 2007 WL 4563875, *2 (N.D. Ga. May 11, 2007)(*citing Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 161 (11th Cir. 2005)).

Here, the Court finds that Mr. Cernobyl is a critical witness, particularly with regard to the willfulness issue, based on his knowledge of Defendant's decision to include the floor supervisors in the tip pool. The Court also finds that Defendant was well aware of Cernobyl's existence and significance since January 2008 when it repeatedly identified him in response to Plaintiffs' interrogatories. *See, e.g., Tedford v. Cothran*, 2009 WL 112560, *1 (N.D. Miss. Jan. 15, 2009)(where defendant was aware of plaintiff's witness months before he was officially disclosed, court found defendant had "neither been unfairly ambushed nor unfairly prejudiced"). As the Advisory Committee Notes to Rule 26(e) state, there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties . . .

during the discovery process, [such] as when a witness not previously disclosed is identified during the taking of a deposition." Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 26(e). Thus, Plaintiffs were not obligated to advise Defendant of their intent to call Mr. Cernobyl as a witness prior to the filing of their trial witness list, which was timely filed in accordance with this Court's scheduling order.

Based on the foregoing, Mr. Cernobyl will be permitted to testify at trial.

## CONCLUSION

Accordingly, Defendant's Motion *in Limine* to exclude evidence of prior settlements (DE 99) is **GRANTED.** Plaintiffs' Motion *in Limine* to exclude evidence of the industry practice at other cardrooms (DE 98) is **GRANTED**. Defendant's Motion to Strike Mr. Cernobyl from Plaintiffs' witness list (DE 111) is **DENIED.**

The Court will conduct a Final Pre-trial Conference in this matter on **Wednesday, February 25, 2009 at 2:00 p.m. at the United States Courthouse, 701 Clematis Street, West Palm Beach, Florida 33401 in Courtroom 6.**

**DONE AND ORDERED** in Chambers this 23 day of February, 2009, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to: Counsel of Record