UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: Case No.07-80912-Civ-Hopkins

JOHN WAJCMAN and CHARLES
ASHMORE, on behalf of themselves
and all others similarly situated,

                          Plaintiffs,

v.

INVESTMENT CORPORATION OF
PALM BEACH, d/b/a/ PALM BEACH
KENNEL CLUB, a Florida Corporation,

                          Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (DE 153)

**THIS CAUSE** has come before the Court following a jury trial of this matter in March 2009.

At the conclusion of the trial, the jury rendered a verdict in favor of Plaintiffs, finding that Defendant

had operated an illegal tip pool under the Fair Labor Standards Act ("FLSA") and that Plaintiffs were

entitled to additional wages. Using the parties' stipulated method for computing the additional

wages due, the Court concluded that Defendant owed Plaintiffs $66,603.13 in overdue wages. (DE

149). Although the jury also concluded that Defendant did not willfully violate the FLSA, the Court

found that Defendant failed to satisfy its burden of establishing a good faith defense and that,

therefore, Plaintiffs were also entitled to liquidated damages in the amount of $66,603.13. (DE 149).

The Court entered judgment accordingly on May 15, 2009. (DE 150).

Presently before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (DE 153).

Defendant filed its response on June 22, 2009 (DE 159) and Plaintiffs filed reply papers on June 30,

2009. (DE 165). This matter is now ripe for the Court's review.

## BACKGROUND

Plaintiffs initiated this collective action alleging that Defendant violated the FLSA while Plaintiffs were employed as poker dealers in Defendant's cardroom. Specifically, Plaintiffs claimed that Defendant violated the FLSA by mandating their participation in a tip pooling scheme, whereby the poker dealers were required to share their tips with the cardroom floor supervisors. According to Plaintiffs, the cardroom floor supervisors should not have been included in the tip pool because they did not have significant interaction with the customers and did not normally receive tips. The jury found in favor of Plaintiffs and concluded that Defendant's tip pool was invalidated by the inclusion of the floor supervisors. As noted above, Plaintiffs were awarded a total of $133,206.26.

With the instant motion, Plaintiffs seek reimbursement of attorneys' fees in the amount of $164,422.50, a 75% upward adjustment of $123,316.87, and costs in the amount of $4,733.45 for a total of $292,472.82. (DE 154).[1]

## DISCUSSION

### 1. Plaintiffs' Status as the Prevailing Party

Under the FLSA, a plaintiff who prevails on his claim is entitled to an award of attorney's fees and costs. *See Galvez v. Cuevas*, 2009 WL 1024632, *2 (S.D. Fla. April 15, 2009)(*citing* 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

---

[1] The total amount of attorneys' fees sought is roughly divided between the two attorneys who worked on this case: $84,525.00 for Christopher Whitelock, Esq. and $79,897.50 for Chad Levy, Esq.

Here, Defendant does not dispute that in light of the jury's verdict, Plaintiffs are the prevailing party in this action. *See Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791 (1989)(a prevailing party is one who has "succeeded on any significant claim affording it some of the relief sought"). Accordingly, it is clear that Plaintiffs are entitled to an award of attorneys' fees. Although Defendant does not dispute Plaintiffs' entitlement to attorneys' fees, Defendant does dispute the hourly rates charged by counsel, the number of hours claimed by Attorney Chad Levy and the request for an upward adjustment. (DE 159 at page 2). Defendant contends that Plaintiffs should only be awarded $126,735.00 in attorneys' fees.

**2. Plaintiffs' Motion for Attorneys' Fees**

It is well settled that a reasonable attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1994)). The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. In assessing the number of hours billed, the Court should exclude hours that were not "reasonably expended," in other words, hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301 (*emphasis in original*)). Once this "lodestar" amount is calculated, the Court has the discretion of adjusting it up or down depending on the results

obtained.  *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.

1994)).

As to the type of evidence that the fee claimant should produce in support of a fee

request, in *Barnes*, the Eleventh Circuit stated,

> The "fee applicant bears the burden of establishing entitlement and
> documenting the appropriate hours and hourly rates." *Norman*, 836
> F.2d at 1303.  That burden includes "supplying the court with
> specific and detailed evidence from which the court can determine
> the reasonable hourly rate. Further, fee counsel should have
> maintained records to show the time spent on the different claims,
> and the general subject matter of the time expenditures ought to be
> set out with sufficient particularity so that the district court can
> assess the time claimed for each activity . . . A well-prepared fee
> petition also would include a summary, grouping the time entries
> by the nature of the activity or stage of the case." *Id*. (*citations
> omitted*).

168 F.3d at 427.

In submitting a request for attorney's fees, fee applicants are required to exercise "billing

judgment."  *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or

otherwise unnecessary" hours, then the Court must exercise billing judgment for them.  *Id*.

### A.  Hourly Rates

In seeking reimbursement for their attorneys' fees, Plaintiffs rely on the billing records of

the two attorneys who performed work in the case, Christopher Whitelock, Esq., who seeks an

hourly rate of $350.00, and Chad Levy, Esq., who seeks an hourly rate of $225.00.  (DE 153 at

pages 11-12).  In support of their claimed hourly rates, Plaintiffs submit an expert affidavit from

Robert H. Schwartz, Esq., who has been practicing law in Florida since 1980.  *See* Schwartz Aff.

at ¶ 1(DE 153).  Mr. Schwartz's affidavit indicates that he has a general litigation practice.  *Id*. at

¶5.  It does not appear that Mr. Schwartz engages in employment litigation.  Nevertheless, Mr. Schwartz states that he has "personal knowledge as to the amount of time and effort it takes for an attorney of competent knowledge, skill and experience to prosecute an action in Federal Court" and he is "aware of the rates charged by other attorneys in other federal matters."  *Id.* at ¶ 7, 11.  In Schwartz's opinion, the hourly rates sought by Whitelock and Levy in this case are "reasonable" and "within the range of prevailing market rates in this legal community."  *Id.* at ¶ 8, 10, 13.

According to Plaintiffs' motion, Whitelock was admitted to the Florida Bar in 1996.  *See* Whitelock Aff. at ¶ 2 (DE 153).  Whitelock states that nearly 85% of his practice focuses on employment-related matters and that he has handled over 300 such cases in this District.  *Id.* at ¶ 5, 6.  Whitelock also gives lectures on the FLSA to corporate officers and human resources personnel.  *Id.* at ¶14.  Although Whitelock considers his hourly rate of $350.00 to be reasonable based on his experience in handling FLSA cases, he fails to cite any instances where other courts in this District have awarded him that rate.

With respect to Levy, he has been a member of the Florida Bar since 2004.  *See* Levy Aff. at ¶ 2 (DE 153).  Levy states that 95% of his practice is spent on employment related litigation, primarily in the representation of plaintiffs, and that he has handled over 150 such cases in this District.  *Id.* at ¶ 4, 5.  According to Levy, he is responsible for developing the theory that floor supervisors should not be included in poker room tip pools.  *Id.* at ¶ 6.  Levy believes that his hourly rate of $225.00 is reasonable, although he does not cite to any cases where other court have awarded him that rate.

Defendant contends that the hourly rates sought are excessive and should be reduced to

$290.00 for Mr. Whitelock and $175.00 for Mr. Levy.[2]   Defendant supports its request for the

rate reductions with an expert affidavit by Michael Pancier, Esq.  According to his affidavit, Mr.

Pancier has been licensed to practice law in Florida since 1992.  *See* Pancier Dec. at ¶ 1 (DE

159).  He has been "actively engaged in employment and wage and hour litigation" in this

District since that time, devoting approximately 90% of his practice to such cases.  *Id.* at ¶ 2, 4.

Mr. Pancier has served on numerous labor and employment committees of the Florida Bar

Association and he has been named a Super Lawyer in the area of Labor and Employment for the

last two years.  *Id.* at ¶ 3,4.

     According to Mr. Pancier, because of his practice and experience, he is "familiar with the

fees and hourly rates customarily charged by attorneys practicing in the field of labor and

employment litigation in the Southern District of Florida."  *Id.* at ¶ 6.  In addition, Mr. Pancier

states that he has litigated against Plaintiffs' counsel previously and is familiar with their

experience and abilities.  *Id.* at ¶ 17.  Mr. Pancier states that "[a] practitioner with an average

level of skill in this area could have competently handled this matter" and that based on the skill

level demonstrated by counsel in this case and their years of experience, they "should be

compensated at much lower rates."  *Id.* at ¶ 13.  Mr. Pancier opines that a reasonable range for

Mr. Whitelock's hourly rate is $285.00 - $300.00 and that a reasonable range for Mr. Levy is

$165.00 - $185.00.  *Id.* at ¶ 20.  Mr. Pancier also contends that "the use of Mr. Levy at trial was

more in a support capacity rather than in a co-counsel capacity" and, therefore, his rate at trial

"should be commensurate with rates charged by paralegals."  *Id.* at ¶ 17.

---

     [2]  For time Mr. Levy spent at trial, Defendant contends he should be compensated at a
paralegal's billing rate of $75.00 - $100.00 an hour.  (DE 159 at page 6).

The Court has considered the opinions of both experts and is familiar with the billing rates of attorneys who litigate FLSA cases in this region. *See First Vagabonds Church of God v. City of Orlando, Fla.*, 2008 WL 4877159, *2 (M.D. Fla. Nov. 12, 2008)(the court may rely on its "own knowledge and experience concerning reasonable and proper fees"). Based on the foregoing, the Court finds that the hourly rate of $225.00 charged by Mr. Levy is reasonable. *See Shannon v. Saab Training USA, LLC*, 2009 WL 1773808, *6 (M.D. Fla. June 23, 2009)(reasonable range for FLSA attorney practicing between three and five years is $175.00 - $225.00). However, the Court finds that the hourly rate sought by Mr. Whitelock should be reduced to reflect rates typically awarded to FLSA attorneys in this area. Accordingly, the Court will reduce Mr. Whitelock's hourly rate to $300.00. *See Perez v. Sanford-Orlando Kennel Club, Inc.,* 2009 WL 2500290 (M.D. Fla. Aug. 14, 2009)(FLSA attorney with sixteen years experience awarded hourly rate of $300.00); *Godoy v. New River Pizza, Inc.,* 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008)(FLSA attorney with fourteen years experience awarded hourly rate of $300.00).

With regard to Mr. Levy's participation at trial, Defendant objects to Levy charging his full rate for the 42 hours he billed while attending the trial with Mr. Whitelock. (DE 159 at page 9). Defendant contends that because Mr. Whitelock "handled all aspects of the trial" and because Mr. Levy did not examine witnesses or make any arguments to the jury or Court, he should be compensated at a paralegal rate. *Id.*

The Court rejects Defendant's argument that Mr. Levy should be reimbursed at a paralegal's rate for his attendance at trial. Although it is true that Mr. Whitelock served as lead counsel, it is significant that this was a fast-paced, four-day, collective action trial with twenty plaintiffs, twelve witnesses, and a number of complex evidentiary issues. Thus, the Court

concludes that Mr. Levy's assistance was necessary to the prosecution of Plaintiffs' case and that

his presence at trial was justified. Notably, this was not a routine FLSA trial, where the only

issue to be litigated is the number of overtime hours worked. Here, given Mr. Levy's statement

that he is responsible for identifying and developing the disputed legal issue in this case, it is

evident that Mr. Levy's contributions were of a substantive legal nature, and not the sort that

could be properly delegated to a paralegal. Finally, Mr. Levy's experience and billing rate is

substantially less than Mr. Whitelock's and is appropriate for a second-chair attorney at trial.

*See, e.g., First Vagabonds Church of God*, 2008 WL 4877159 at *2 (in awarding fees to second-

chair attorney, court noted that such positions are usually held by third or fourth year associates);

*Van Voorhis v. Hillsborough Bd. of County Com'rs*, 2008 WL 2790244,*2 (M.D.Fla. July 18,

2008)(court awarded fees to second-chair attorney in ADEA case even though it was "routine,"

"not particularly complex" and "did not involve novel legal issues").

### B.  Number of Hours Reasonably Expended

According to counsel's affidavits and the billing records attached to Plaintiffs' motion,

Whitelock billed a total of 241.5 hours in this matter and Levy billed a total of 355.1 hours. *See*

Whitelock's Aff. at ¶ 22 (DE 153). While Defendant does not dispute Whitelock's hours, it

seeks to reduce the total amount of time Levy billed by 10.7 hours. (DE 159 at page 11).[3]

The law is clear in that where multiple attorneys perform work on a case, they may each

be compensated, so long as the attorneys' efforts are not unreasonably duplicative. *See Barnes*,

---

[3] The 10.7 hours Defendant objects to consist of the following entries: 3.5 hours for oral argument on the summary judgment motion; 2.3 hours to attend mediation; 4.5 hours to attend a pre-trial conference; and .4 hours to attend the final pre-trial conference conducted via telephone. (DE 159 at page 8). According to Defendant, Levy's entries for these events are duplicative of Whitelock's and should be stricken. *Id.*

168 F.3d at 432 ("[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation")(*quoting Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)); *Norman*, 836 F.2d at 1301-1302 (observing that multiple attorneys may be compensated for their work on a case "if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer")(*citing Johnson*, *supra*).

Here, it is significant that Defendant's expert, Mr. Pancier, does not support Defendant's application to reduce Mr. Levy's hours. While Mr. Pancier disputes the hourly rate sought by Plaintiffs' counsel, notably, he does not challenge the number of hours billed by counsel. *See* Pancier Dec. at ¶ 9, 17. Indeed, he states that "[b]ecause this matter involves a novel tip credit issue, the hours expended by the Plaintiffs' counsel in this case do not appear to be excessive, redundant or otherwise unnecessary." *Id.* at ¶ 9.

The Court finds Mr. Pancier's assessment to be forthright and compelling, especially since he is a long-time practitioner of labor and employment litigation. Moreover, the Court has conducted an independent review of Mr. Levy's hours and does not find them to be excessive or unreasonably duplicative. Finally, the Court notes that the number of hours Plaintiffs' counsel spent on this case is partially attributable to Defendant's refusal to engage in settlement discussions. *Powell v. Carey Intern., Inc.*, 547 F.Supp.2d 1281, 1297 (S.D. Fla. 2008)(court found "defendants' conduct in vigorously defending this case did contribute to the price tag on the attorneys' fees award"). Based on the foregoing, the Court declines to reduce Mr. Levy's hours.

### 3.  Plaintiffs' Request for Upward Adjustment

It is well settled that although upward adjustments of the lodestar figure are "permissible" in certain "certain rare and exceptional" circumstances, in general, there is a "strong presumption" that the lodestar figure, without any enhancement, represents a "reasonable fee." *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331, *10 (S.D. Fla. May 23, 2002)(*citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Thus, courts are typically reluctant to award enhancements of the lodestar amount.  *See Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1221 (11th Cir. 2008)(describing the Supreme Court's "decisional arc" as bending "decidedly against enhancements").

In deciding whether an upward or downward adjustment of the lodestar amount is warranted, there are a number of pertinent factors for the Court to consider:

1) the time and labor required;
2) the novelty and difficulty of the questions;
3) the skill requisite to perform the legal service properly;
4) the preclusion of other employment by the attorney for accepting the case;
5) the customary fee;
6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
9) the experience, reputation, and ability of the attorney;
10) the "undesirability" of the case;
11) the nature and length of the professional relationship with the client; and
12) awards in similar cases.

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  However, the Supreme Court has noted that "many of the *Johnson* factors are subsumed within the initial calculation of the lodestar," and factors such as "the novelty and complexity of the issues, the special skill and experience of counsel, [and] the quality of representation . . . are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing

the basic fee award." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)(*internal quotations and citations omitted*).

The Supreme Court has stated "the most critical factor is the degree of success obtained." *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1326 (M.D. Fla. 2001)(*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). *See also Popham v. City of Kennesaw*, 820 F.2d 1570, 1578-79 (11th Cir. 1987)("if the plaintiff obtained only 'partial or limited success,' the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief"). Moreover, the Court has instructed that only "exceptional results," rather than merely "excellent results," will justify an increased award of attorney's fees. *James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1341, 1351 (S.D. Fla. 2007)(*citing Hensley*, 461 U.S. at 435 ("[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . in some cases of exceptional success an enhanced award may be justified.")).

Here, Plaintiffs contend that their attorneys are entitled to a 75% enhancement of their fee award based on the following:

1. the case was one of "first impression that created new law;"

2. Defendant's unwillingness to settle;

3. counsel's "skill and extensive time/labor" spent in preparing the case provided their clients with "superior representation;"

4. counsel achieved "exceptional" results, namely, 100% recovery of wages and an equal amount of liquidated damages for their clients;

5. the "uncertainty" and "undesirability" of the case, as well as the "complete lack of payment."

(DE 153 at page 14; DE 165 at page 10).

Contrary to Plaintiffs' conclusion, this is not the sort of "exceptional" case that warrants an enhancement in the attorney fee award. First, although it is undisputed that Plaintiffs prevailed in this lawsuit and that counsel achieved a favorable outcome for the vast majority of their clients, the fact remains that this was not a complete victory for Plaintiffs. Indeed, their success was somewhat limited by counsel's failure to convince the jury that Defendant's violation of the FLSA was willful. Counsel's failure in this regard resulted in the implementation of a two-year statute of limitations (rather than a three-year period), which barred two members of the collective action from any recovery at all. Moreover, in cases brought under the FLSA, where the burden of proof is on the employer, as it was here, "the risks undertaken and successfully met by counsel for plaintiff[s]" are not "so enormous as to justify an upward adjustment of the lodestar amount." *Lewis v. Hurst Orthodontics, PA*, 292 F. Supp. 2d 908, 912 (W.D. Tex. 2003)(*citing Smith v. City of Jackson, Miss*., 954 F.2d 296, 298 (5th Cir. 1992)).

With regard to the other factors raised by Plaintiffs, including, the "unprecedented nature" of the case and counsel's "superior representation," the Supreme Court has made clear that factors such as the novelty of the issues, an attorney's special skill, and the purported quality of the representation "cannot serve as independent bases for increasing the basic fee award" because these factors are already "subsumed within the initial calculation of the lodestar." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 565. There is no evidence to support Plaintiffs' position that the case was "undesirable" and Defendant's unwillingness to settle is irrelevant to any enhancement analysis. Finally, the fact that counsel has not been paid up to this point is customary in a contingency fee case and is not a proper basis for enhancement. *See Kenny*, 532 F.3d at 1224 (noting that the Supreme Court has "squarely rejected the

12

proposition that a court may enhance the fee award above the 'lodestar' amount in order to reflect the fact that the party's attorneys were retained on a contingent-fee basis and thus assumed the risk of receiving no payment at all for their services")(*citing City of Burlington v. Dague*, 505 U.S. 557 (1992)).

Based on the foregoing, the Court finds that Plaintiffs have not met their burden of establishing that the results here were so exceptional as to justify an upward adjustment of the attorneys' fee award. *See Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331, *10 (S.D. Fla. May 23, 2002)(although counsel achieved "excellent results" on plaintiff's FLSA claim, court did not find the results to be "so exceptional or rare as to warrant an enhancement of the fee award").

### 4.  Plaintiffs' Litigation Expenses and Costs

Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute. *See* Fed. R. Civ. P. 54(d)(1).  Rule 54(d) creates a presumption in favor of awarding costs to the prevailing party. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991).  However, such presumption is not without limits, and courts may only tax costs as authorized by statute. *See EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000)(*citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

 "Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-442 (1987).  This section provides in part,

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Here, Plaintiff seeks to recover $4,733.45 in costs, which includes the filing fee, photocopies, fees for service of process, deposition transcripts, and a witness fee. (DE 153). Defendant does not object to the costs sought. (DE 159). The Court has reviewed Plaintiffs' itemized list of costs and finds that, with the exception of the deposition fees, the costs sought are permissible under the statute and are properly supported by Plaintiffs' motion.

With regard to the costs relating to deposition expenses, Plaintiffs do not provide any invoices to support their request for $3,747.05. *See* S.D. Fla. L.R. 7.3.C (April 2009)("The bill of costs should attach copies of any documentation showing the amount of costs."). In this Court's experience, it is customary for stenographer's invoices to include additional expenses for condensed transcripts, electronic transcripts, shipping and exhibits, among other things. Where such extra services are only for the convenience of counsel, they are not reimbursable. *See Goodwall Const. Co. v. Beers Const. Co.*, 824 F.Supp. 1044, 1066 (N.D. Ga. 1992)(deposition costs incurred merely for convenience to counsel are not necessary or recoverable), *aff'd*, 991 F.2d 751 (Fed. Cir. 1993). *See also George v. Florida Dept. of Corrections*, 2008 WL 2571348, *6 (S.D. Fla. May 23, 2008)(court denied reimbursement of transcript delivery fee); *Suarez v. Tremont Towing, Inc.*, 2008 WL 2955123, *3 (S.D. Fla. Aug. 1, 2008)(court did not allow

14

reimbursement for delivery or exhibits); *Johnson v. Communications Supply Corp.,* 2006 WL 3709620, *2 (S.D. Fla. Dec. 14, 2006)(court found that mini-transcripts and disk copies of transcripts are for the convenience of counsel and thus are not recoverable). Based on the record before the Court, it cannot ascertain which deposition expenses are reimbursable. Accordingly, this Court declines to award Plaintiffs any of their deposition costs. *See Smith v. CA, Inc.,*2009 WL 536552, *2 (M.D. Fla. March 3, 2009)(where court is unable to identify the "necessity" of the costs sought, the party seeking reimbursement has failed to meet its burden).

## CALCULATION OF TOTAL AWARD

This Court calculates the total award as follows:

1.  Attorneys' Fees:

    Chad Levy, Esq.: 355.1 hours at an hourly rate of $225.00 = $79,897.50

    Christopher Whitelock, Esq.: 241.5 hours at an hourly rate of $300.00 = $72,450.00

    Total Attorneys' Fees: $152,347.50

2.  Expenses and Costs:

    (a) Filing Fee and Service of Process = $440.00

    (b) Photocopying Fees = $506.40

    (c) Witness Fees = $40.00

    Total Costs:    $ 986.40

    **TOTAL ATTORNEYS' FEES & COSTS:        $153,333.90**

## **CONCLUSION**

In light of the foregoing, this Court **GRANTS IN PART AND DENIES IN PART**

Plaintiffs' Motion for Attorneys' Fees and Costs (DE 153).  Defendant is directed to pay

Plaintiffs' attorneys' fees and costs in the amount of $153,333.90 within **THIRTY (30) DAYS**

of the date of this Order.[4]

**DONE AND ORDERED**  this 10 day of September, 2009 at West Palm Beach in the

Southern District of Florida.

_James M. Hopkins_

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:  Counsel of Record

---

[4]  Based on Defendant's filing of a supersedeas bond, the Court previously stayed any execution of the judgment in this case pending a decision on the parties' post-trial motions. (DE 168).  Those motions are now resolved.  Therefore, Defendant will have ten days from the date of this Order to move for an extension of the stay in the event an appeal is filed.  Otherwise, the stay of execution will be automatically lifted ten days after the date of this Order.